UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
GURAMRIT HANSPAL,

                Plaintiff,

  -against-

J.P. MORGAN CHASE BANK, N.A.,
and WASHINGTON MUTUAL BANK,

                Defendants.
---------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 18-CV-0295 (FB) (RML)

**BLOCK, Senior District Judge:**

In 1999, Guramrit Hanspal defaulted on his mortgage. He has spent the last twenty years fighting the consequences of that default in state and federal court.

This aspect of the fight began as a state-court action seeking damages and injunctive relief from J.P. Morgan Chase Bank, N.A. ("Chase"). Chase removed to this Court based on diversity jurisdiction and now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

**I**

The following facts are taken from Hanspal's complaint. In addition, the Court takes judicial notice of the case's lengthy litigation history. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court

must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201."); *see also id.* at 774 ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Washington Mutual Bank ("WaMu") foreclosed Hanspal's mortgage in 1999. On May 16, 2000, it obtained a state-court judgment of $258,303.30. In 2005 the mortgaged property was sold at auction for $483,745.09.

WaMu collapsed in 2008, a victim of—and major contributor to—the subprime mortgage crisis. Its assets were seized by the Federal Deposit Insurance Corporation and sold to J.P. Morgan Chase Bank, N.A. ("Chase").

In 2010, Chase brought a summary holdover proceeding to evict Hanspal from the property. The Nassau County District Court entered a judgment awarding possession to Chase and issued a warrant of eviction. After the judgment was upheld on appeal, *see JP Morgan Chase Bank v. Hanspal*, 37 Misc. 3d 140(A) (N.Y. App. Term 2012), the Nassau County Sheriff issued a notice to vacate.

Undeterred, Hanspal filed a civil action against Chase in state court in 2013. He sought "cancellation" of the foreclosure and eviction on the ground that Chase

had failed to prove that it was WaMu's successor-in-interest, plus $50,000 in damages to his personal property. The Nassau County Supreme Court granted Chase summary judgment on all claims and denied Hanspal leave to amend. The Second Department upheld the dismissal of Hanspal's challenges to the foreclosure and eviction proceedings, but reinstated his claim for damages to his personal property. *See Hanspal v. Washington Mut. Bank*, 61 N.Y.S.3d 324 (2d Dep't 2017). Hanspal has taken no further action in the 2013 lawsuit.

Instead, Hanspal filed a *second* complaint against Chase in state court in 2017. As a result of Chase's removal, that complaint is now before the Court.[1]

## II

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

---

[1]After removal of this case, Hanspal filed a *third* action in state court. The complaint in that case was dismissed with prejudice.

3

Hanspal's complaint consists of five state-law causes of action:

1. damages for "abuse of process and perjury" in connection with the foreclosure and eviction proceedings;

2. damages to personal property during the eviction;

3. damages for "intentional prima facie tort";

4. an injunction requiring Chase to account for and remit the surplus from the foreclosure sale; and

5. an injunction forbidding Chase from pursuing any further eviction proceedings.

The Court addresses each claim in turn.

**1.   "Abuse of Process and Perjury"**

Hanspal's first cause of action is barred by a combination of two preclusion doctrines. "Under the doctrine of res judicata, a final judgment precludes reconsideration of all claims which could have or should have been litigated in the prior proceedings against the same party." *Breslin Realty Dev. Corp. v. Shaw*, 893 N.Y.S.2d 95, 99 (2d Dep't 2010) (citing *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347 (1999)). "The doctrine of collateral estoppel, a narrower species of res judicata, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in the prior action or proceeding, and decided

against that party or those in privity[.]" *Id.* (citing *Ryan v. New York*, 62 N.Y.2d 494, 501-502 (1984)).[2]

In the 2013 lawsuit, the Second Department held that Hanspal's argument that Chase lacked standing to evict him was barred by res judicata because he "actively participated in the eviction action [and] could have challenged, but did not challenge, [Chase's] standing in that action." *Hanspal*, 61 N.Y.S.3d at 327 (citing *Breslin Realty Dev. Corp.*, 893 N.Y.S.2d at 99). Thus, Chase's "standing"—that is, whether it was WaMu's successor-in-interest in 2010—was not actually litigated or decided in either the eviction action or the 2013 action. But whether Hanspal could challenge Chase's status was actually litigated and decided, with the Second Department holding that he could not. Its decision on that issue is itself entitled to preclusive effect under the doctrine of collateral estoppel.

Hanspal's first cause of action in this case also implicates Chase's status as WaMu's successor-in-interest. He alleges that Chase did not, in fact, have an interest in the property at the time of the eviction proceeding, such that its effort to evict him was "abuse of process" and its representations of ownership to the state court were "perjury." Since, however, Hanspal is collaterally estopped from

---

[2]In a diversity case such as this, the Court applies New York rules of preclusion. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).

5

challenging Chase's status, he cannot establish those allegations. This is true even though he seeks tort damages in this action and sought equitable relief in the 2013 action. *See Breslin*, 893 N.Y.S.2d at 99 (noting that collateral estoppel applies "whether or not the . . . causes of action are the same"). In sum, Hanspal's first cause of action is barred by collateral estoppel.

Even if it were not precluded, Hanspal's first cause of action would fail on the merits. One of the elements of a cause of action for abuse of process is "use of [regularly issued] process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984). Eviction of a possessor is the intended objective of an eviction proceeding, not a collateral one. With respect to perjury, "allegations of perjury committed in [] prior judicial proceedings do not form the basis of a separate, subsequent civil action for damages." *Joseph v. Citibank*, 714 N.Y.S.2d 662, 662 (2d Dep't 2000).

**2. Damage to Personal Property**

Hanspal's second cause of action repeats his claim in the 2013 action that his personal property was damaged during the eviction. This cause of action is not barred by collateral estoppel because Chase's status is not a dispositive issue, as it was on his first cause of action. Whether or not Chase is WaMu's successor-in-interest, it could still be liable for damages occasioned during the eviction.

6

Instead, Chase argues that the Court should dismiss because the identical cause of action is pending in the 2013 action in state court. "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal quotation marks and citation omitted). In "exceptional" cases, however, "considerations of [w]ise judicial administration" may justify dismissal. *Id.* at 818.

"The decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *see also Colorado River*, 424 U.S. at 819 ("Only the clearest of justifications will warrant dismissal."). Relevant factors include: "(1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction."

*Village of Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999).

Of those factors, the first two are neutral and the next three weigh in favor of dismissal. The sixth, however, strongly counsels against dismissal because there is no guarantee that the state court would allow Hanspal to revive a case that has lain dormant since it was remanded in 2017. This is, of course, a problem of Hanspal's own making, but it would still mean the loss of a potentially valid claim without a decision on the merits by any court. The importance of that consideration, *see Moses H. Cone*, 460 U.S. at 16 ("The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case."), and the presumption in favor of exercising jurisdiction lead the Court to conclude that the technical pendency of the 2013 action does not warrant dismissal of Hanspal's second cause of action.

3. **Prima Facie Tort**

One of the elements of Hanspal's third cause of action—prima facie tort—is the "intentional infliction of harm." *Curiano*, 63 N.Y.2d at 117 (1984). The "touchstone" of that element is "'disinterested malevolence', meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990) (citing *Burns Jackson Miller Summit & Spitzer v.*

*Lindner*, 59 N.Y.2d 314, 332 (1983). "Where there are other motives, e.g., profit, self-interest, business advantage, there is no recovery under tort prima facie." *Squire Records, Inc. v. Vanguard Recording Soc.*, 268 N.Y.S.2d 251, 254 (1st Dep't 1966), *aff'd*, 19 N.Y.2d 797 (1967).

Since Chase was plainly motivated, at least in part, by a desire to obtain possession of the property, Hanspal cannot succeed on his third cause of action. In addition, it is based on conduct that occurred in 2010 and, therefore, is clearly barred by the applicable three-year statute of limitations. *See Marine Midland Bank v. Renck*, 617 N.Y.S.2d 507, 508 (2d Dep't 1994).

4. **Foreclosure Surplus**

The property was sold for more than the amount of the mortgage. Hanspal alleges that he was entitled to the surplus—which was more than $225,000—but did not receive it.

Chase does not dispute those allegations (nor could it at this stage). Instead, it argues that Hanspal's claim for the surplus is barred by the foreclosure judgment.

That is not correct. The foreclosure judgment established WaMu's right to the property and authorized its sale. It said nothing about distribution of the proceeds of the sale for the simple reason that the sale had not yet taken place.

Under New York law, a foreclosure sale results in payment by the purchaser

in exchange for a deed from the officer conducting the sale. *See* N.Y. Real Prop. Acts. L. § 1353. The officer then pays the senior mortgage, various other expenses, and any junior mortgages out of the proceeds of the sale, *see id.* § 1354(1-3).[3] He then makes a report of the sale, after which any party may move the court to confirm it. *See id.* § 1355.

If the sale results in a surplus, it "shall be paid into court by the officer conducting the sale within five days after the same shall be received." *Id.* § 1354(4). The court must then "ascertain and report the amount due [anyone with a claim to or lien on the surplus], and the priority of the several liens thereon and order distribution of surplus moneys." *Id.* § 1361(2). The distribution proceeding can take place in connection with the hearing on the motion to confirm the sale, or by a separate motion brought "at any time within three months thereafter." *Id.* Anyone who has appeared in the foreclosure action, who has recorded a lien on the property, or who has filed a notice of claim to the surplus is entitled to notice of the distribution proceeding, *see id.* § 1361(3); "[t]he owner of the equity of redemption" is specifically singled out as a person entitled to notice, *id*.

---

[3]If the senior mortgagor purchases the property for at least as much as the amount of the mortgage, the purchase is deemed to satisfy the mortgage. *See Washington Mut. Home Loans, Inc. v. Jones*, 814 N.Y.S.2d 166, 168 (2d Dep't 2006).

Hanspal claims that he has no knowledge of a distribution proceeding and that the Nassau County clerk has no record of a surplus being deposited. There is, moreover, nothing in the record before the Court to show that a deposit was made, that proper notice was given, or that the surplus—if there was one—was properly distributed.

It is true that Hanspal himself could have moved to distribute the surplus, and that such a motion would normally have to be made no later than three motions after confirmation of the sale. *See* N.Y. Real Prop. Acts. L. § 1361(2). But failure to comply with that time limit is "a mere irregularity which, in the absence of prejudice to any substantial right of a party, may be disregarded." *Associated Fin. Servs., Inc. v. Davis*, 583 N.Y.S.2d 274, 274 (2d Dep't 1992). This is a particularly compelling case for disregarding the irregularity because Hanspal may not have received notice of the surplus—which would raise serious due process concerns, *see Roslyn Sav. Bank v. Jones*, 330 N.Y.S.2d 954, 959 (Nassau Co. Sup. Ct. 1972) (notice sent to foreclosed property sold eight months earlier did not comport with due process)—and because he stands to lose a substantial amount of money on a technicality.

It may well be, of course, that the surplus was correctly distributed after proper notice to Hanspal. There are presumably records of the post-sale proceedings;

11

Chase would be well-advised to submit them in connection with a motion for summary judgment. At this stage, however, the Court cannot say that Hanspal's claim to the surplus is barred as a matter of law.

**5.     Injunction Against Eviction Proceedings**

Hanspal's fifth cause of action, like his first, is predicated on a challenge to Chase's right to the property. As already explained, he is collaterally estopped from making that challenge.

In addition, under the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "Courts in this Circuit have repeatedly held that the Anti-Injunction Act bars a federal court from enjoining state-court eviction proceedings." *Allen v. New York City Housing Auth.*, 2010 WL 1644956, at *3 (S.D.N.Y. Apr. 20, 2010) (collecting cases).

Finally, Hanspal's requested injunction would bar eviction proceedings against both him and Rajender Pal, to whom Hanspal purportedly sold the property prior to the foreclosure sale. Pal is not a plaintiff here and Hanspal cannot assert Pal's rights. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]his Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot

rest his claim to relief on the legal rights or interests of third parties.").

### III

For the foregoing reasons, Chase's motion to dismiss is granted with respect to Hanspal's first, third, and fifth causes of action. Since the problems with those causes of action go beyond mere pleading defects, they are dismissed with prejudice and without leave to amend. The motion to dismiss is denied with respect to Hanspal's second and fourth causes of action.

**SO ORDERED**.

/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 26, 2019